# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

SIBLEY,  )
       Plaintiffs,  )
V.  )
      ) Case No. 3:23-CV-0375
STATE OF LOUISIANA WILDLIFE AND  )
FISHERIES, et al,  )
       Defendants.  )
_____/

U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
FILED JUN 21 2023
CLERK

## MEMORANDUM FOR REPLY BRIEF IN OPPOSITION TO DOC. 4 - MOTION TO REMAND

Defense Counsel for Continental Land and Fur, hereinafter CL&F, makes multiple materially false claims within his Motion to Remand and includes them within his Memorandum in Support.

Counsel is required by his code of ethics to investigate the case and substantiate any claims with admissible evidence to support his claims. Any legal theories supposed by Counsel therefore must have a basis in law and supported by facts and evidence.

      I.     DIRECT CAUSAL LINK TO INJURY

Defense Counsel (Doc. 4-1) page 2, ¶1, "This action arises from a "Complaint" filed in state court by the *pro se* plaintiff, Brandon Sibley, concerning a "lease" dispute between Mr. Sibley and CL&F."

The Plaintiff's Complaint is an Article III standing case which includes causation, injury in fact, and redressability. The direct causal link to all damages was CL&F's employee, Dewayne Crawford who allegedly trespassed the Plaintiff's property, aided and abetted others to trespass the property, and did so outside his duties, functions, and responsibilities as caretaker of CL&F's "land."

Plaintiff pled specifically (Doc. 1-2) pgs.5-6, ¶14,15, and 16;

"14.    This action arises out of Defendant Crawford's aiding and abetting government officials to unreasonably search and seize property. Defendants worked in concert with one another to chill and deter the inherent, sacred, and inviolable rights of Plaintiff's property. Defendants' seizure of property, absent an affidavit of probable cause or warrant to seize property issued and signed by a magistrate, constitutes irreparable harm and injury to Plaintiff.

15.    The proximate result of Defendant Crawford's acts was state action by Louisiana Wildlife and Fisheries, a Commission of the State of Louisiana, depriving the Plaintiff of constitutionally secured rights; and the concerted effort on the parts of all Defendants to violate Plaintiff's rights, absent of due process, constitutes irreparable harm and injury to the Plaintiff and those similarly situated.

16.     The seized property of Plaintiff was an alligator head, and as of the date of this complaint February 13th, 2023, Plaintiff has neither been charged with a crime nor has the seized property been returned."

**Exhibit D** in Doc. 1-2 is a records request filed by Brandon Sibley in May of 2022, 76 days prior to **Exhibit G**, which is the lease cancellation notice sent by CL&F. As such, Defense Counsel's basis that the dispute is simply a "lease" issue is erroneous and egregious desperation attempts to obfuscate which increases the cost of litigation, directly delays the proceedings, and intentionally misleads this Honorable Court without presenting the Court with any evidence to the Contrary of Plaintiff's Complaint.

## II.    PENDENT AND SUPPLEMENTAL JURISDICTION – GIBBS TEST

"This limited approach is unnecessarily grudging. Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim 'arising under (the) Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *,' U.S.Const., Art. III, s 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'12 The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. ***Levering & Garrigues Co. v. Morrin***, *289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062*. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial

proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *United Mine Workers of Am. v. Gibbs*, *383 U.S. 715, 725, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966)*

In determining whether a district court improperly refused to relinquish jurisdiction over pendent state law claims, we look to the statutory factors set forth by **28 U.S.C. § 1367(c),** and to the common law factors of judicial economy, convenience, fairness, and comity. *See Mendoza v. Murphy*, *532 F.3d 342, 346 (5th Cir.2008)* (noting that "no single factor is dispositive"); see also *Carnegie–Mellon Univ. v. Cohill*, *484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)* (setting forth the common law factors). We are also instructed to guard against improper forum manipulation. Carnegie–Mellon, 484 U.S. at 357, 108 S.Ct. 614. We consider and balance each of the factors to determine whether the district court abused its discretion. See Mendoza, 532 F.3d at 346. *Enochs v. Lampasas Cnty.*, *641 F.3d 155, 158–59 (5th Cir. 2011)*

"Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley*, *972 F.2d at 585* (citing *Wong v. Stripling*, *881 F.2d 200, 204 (5th Cir.1989))*; see *Carnegie–Mellon*, *484 U.S. at 351, 108 S.Ct. 614* (noting that when the federal claims are eliminated at an "early stage" of the litigation the district court has "a powerful reason to choose not to continue to exercise jurisdiction"); *Gibbs*, *383 U.S. at 726, 86 S.Ct. 1130* ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as

well."); ***Brookshire Bros.***, *554 F.3d at 602* (noting that "the general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial"); ***Beiser v. Weyler, 284 F.3d 665, 675 (5th Cir.2002)*** (noting that where "no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court"). Indeed, the Supreme Court has for nearly half a century cautioned federal courts to avoid "[n]eedless decisions of state law" such as the decisions the district court made on the merits of Enochs's Texas state law claims. ***Gibbs, 383 U.S. at 726, 86 S.Ct. 1130. Enochs v. Lampasas Cnty., 641 F.3d 155, 161 (5th Cir. 2011)***

Plaintiff has pled factually and facially that the causation of irreparable harm and injury inflicted includes all Defendants involved and none of the issues before this Court involves any "novel" or complex issues of state law;

"Precedent instructs us to balance each of the statutory factors in order to determine whether a district court abused its discretion. See ***McClelland v. Gronwaldt, 155 F.3d 507, 519 (5th Cir.1998)***, overruled on other grounds by ***Arana v. Ochsner Health Plan, 338 F.3d 433, 440 n. 11 (5th Cir.2003)***. The overall balance of the statutory factors is important. See, e.g., Mendoza, 532 F.3d at 346. The statutory factors are: (1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction. ***28 U.S.C. § 1367(c)***; see also ***United Mine Workers of Am. v. Gibbs***,

*383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)* (setting forth the common law precursor to *§ 1367(c)*)." *Enochs v. Lampasas Cnty.*, *641 F.3d 155, 159 (5th Cir. 2011)*

### III.   SUBSTANTIAL RELATIONSHIP

Defense Counsel (Doc. 4-1) section II states, "Alternatively, the Court should sever and remand Mr. Sibley's claims against the CL&F Defendants because they ***have no substantial relationship*** to Mr. Sibley's claims against LDWF. LDWF seeks to remove this action based on alleged "federal question" jurisdiction. See Notice of Removal, p. 1. As set forth above, Mr. Sibley's claims against the CL&F Defendants arise solely from a lease dispute between Mr. Sibley. The only purported "federal question" in this case is Mr. Sibley's Fourth Amendment challenge against LDWF for its agents' allegedly unconstitutional seizure of Mr. Sibley's decapitated alligator head. Thus, even if Mr. Sibley's claims against LDWF satisfy the "federal question" threshold to fall within the Court's "original jurisdiction," the Court nonetheless lacks "supplemental jurisdiction" over Mr. Sibley's unrelated breach of contract claims against Defendants."

Defense Counsel makes another materially false statement and provides this Court with a wonderful display of legal theory aimed at dissuading this Honorable Court from the facts, however, the Exhibits within Doc. 1-2 and the correct timeline of events, supported by Affidavit, which includes confessions by Dewayne Crawford, an interested party, to provide services to the Plaintiff services which are reserved for the State of Louisiana is factually and facially plausible.

Defense Counsel does not support his assertions with any Affidavits from Defendant Dewayne Crawford that would counter the sworn testimony of Leon Ervin, Brandon Sibley, or Kelly Sibley Jr.; and as such, the public function and nexus test pled by the Plaintiff is factually and facially plausible.

"While generally not applicable to private parties to act "under color" of law does not require that the accused be an officer of the state; it is enough that he is a willful participant in joint activity with the state or its agents. *__Dennis v. Sparks,__ 449 U.S. 24, 29 (1980).* In determining if a private party acted under color of law, courts generally start with the presumption that private conduct does not constitute governmental action. *__Sutton v. Providence St. Joseph Medical Center,__ 192 F.3d 826, 835 (9th Cir. 1999)*; see also *__Price v. Hawaii,__ 939 F.2d 702, 707-08 (9th Cir. 1991).* "§ 1983 excludes from its reach private conduct, no matter how discriminatory or wrong." *__Sutton,__ 192 F.3d at 835.* Action taken by private individuals may be "under color of state law" only where there is "significant" state involvement in the action. *__Howerton v. Gabica,__ 708 F.2d 380, 382, (9th Cir. 1983)*."

"To read the "under color of any statute" language of the Act in such a way as to impose a limit on those Fourteenth Amendment violations that may be redressed by the § 1983 cause of action would be wholly inconsistent with the purpose of *§ 1* of the *Civil Rights Act of 1871, 17 Stat. 13, from which § 1983* is derived. The Act was passed "for the express purpose of 'enforc[ing] the Provisions of the Fourteenth Amendment.'" *__Lynch v. Household Finance Corp.__, 405 U.S. 538, 545, 92 S.Ct.*

*1113, 1118, 31 L.Ed.2d 424 (1972)*. The history of the Act is replete with statements indicating that Congress thought it was creating a remedy as broad as the protection that the Fourteenth Amendment affords the individual. Perhaps the most direct statement of this was that of Senator Edmunds, the manager of the bill in the Senate: "[Section 1 is] so very simple and really reenact[s] the Constitution." *Cong.Globe, 42d Cong., 1st Sess., 569 (1871)*. Representative Bingham similarly stated that the bill's purpose was "the enforcement ... of the Constitution on behalf of every individual citizen of the Republic ... to the extent of the rights guarantied to him by the Constitution." Id., App. 81. *Lugar v. Edmondson Oil Co., 457 U.S. 922, 934, 102 S. Ct. 2744, 2752, 73 L. Ed. 2d 482 (1982)*

The Supreme Court has applied several different formulas to determine whether seemingly private conduct may be charged to the state. (recognizing public function test, state compulsion test, nexus test, and joint action tests). Under the public function test, a "private entity may be deemed a state actor when that entity performs a function which is traditionally the exclusive province of the state. *Bass v. Parkwood Hosp., 180 F.3d 234, 241–42 (5th Cir. 1999)*

Under the nexus or joint action test, state action may be found where the government has "so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." *Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 457, 42 L.Ed.2d 477 (1974)*

## IV. "LEASE" SUBSTANTIALLY PREDOMINATES OVER FEDERAL CLAIM

Defense Counsel (Doc. 4-1) section III states, "Alternatively, even if the Court finds "supplemental jurisdiction" (which is denied), the Court should "decline to exercise supplemental jurisdiction" because Mr. Sibley's lease claims "substantially predominate" over his federal claim. Despite Mr. Sibley's tangential, constitutional law foray against the State over the seizure of his alligator head, this action rises and falls on a simple lease dispute between Mr. Sibley and his landlord, CL&F. The litigation between CL&F and Mr. Sibley originally commenced on February 24, 2023 when CL&F filed its lawsuit in Terrebonne Parish to enforce the lease and remove Mr. Sibley and his "homemade" "houseboat" from the leased premises ("Terrebonne Suit")."

Life, Liberty, and Property are: inalienable, fundamental, and inherent rights of existence; rights which are the very basis of why institutions of men are created. All the laws created by free men include the fact that life, liberty, and property do not exist because men have made laws, on the contrary, it was the fact that life, liberty, and property existed beforehand that caused men to make laws to protect the fundamental principles of existence.

""Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passion; they cannot alter the state of facts and evidence."[1]

---

[1] John Adams, The Portable John Adams

Plaintiff had zero inclination that Dewayne Crawford was the initial causation of injuries until the date of July 9th, 2022, pled specifically in ¶32 (Doc. 1-2) which states, "On the date of July 9th, 2022, Sergeant Randy Lanoux visited the Plaintiff's home and honors part of the records request informing Plaintiff that the direct causation of the action taken was Defendant Dewayne Crawford; who climbed aboard the houseboat and sent pictures to Louisiana Wildlife and Fisheries."

Plaintiff continues in ¶34 (Doc. 1-2) and states, "On the date of July 16th, 2022, with no response from the previously stated voicemail Plaintiff sent Defendant Dewayne Crawford a text message which stated, "Dewayne, I left you a voicemail today, this is Brandon Sibley. I pray that whatever differences can be settled moving forward. However, malicious intent to abuse process is an injury, not only to me, but was also a violation of Louisiana Constitutional *right to privacy, unwarranted search and seizure of my property*, and a *breach of your duty* as caretaker. I'm trying my best not to injure my fellow man, who might be ignorant of the real law of this country and the great state of Louisiana. I would love to be able in good faith settle the differences, as men, and simply let bygones be bygones. That isn't the way of the world today where offenses and challenges of authority are deemed radical. I pray to hear from you before Monday. My comment towards you as being trained in the law was not meant to be a threat, what it was meant to explain to you was simple. I am not my uncle Stacy, I am not a drunk, I am not a man who will violate the life, liberty, and property of my fellow man. You did not understand what I was talking about. Obviously, you took the warning as a threat

and decided to challenge my assertion. I can write, read, and plead effectively to a court for redress of grievances to those who would violate my right to life, liberty, and property. I would love to talk to you and grant you the opportunity you refused to grant me. The golden rule is exactly how I live my entire existence and I will continue doing so".

Defense Counsel inclinations, passions, and wishes about the timeline of events versus the reality of receipts kept by the Plaintiff borders on "knowingly and recklessly pursuing frivolous claims."

Whether CL&F were in contract or not, negligence on the part of Dewayne Crawford is the direct causal link. There is no doubt that the primary claim which predominates the entire case or controversy has to do with private actors causing a deprivation of rights when acting within the ambit of state authority.

## V.  CONCLUSION

"In assessing the complaint, a court must accept all well-pleaded facts as true and construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, *197 F.3d 772, 774 (5th Cir. 1999)*; *Gentilello v. Rege*, *627 F.3d 540, 544 (5th Cir. 2010)*. "[T]he Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, *No. 08-5096, 2011 WL 4352299*, at (E.D. La. Sept. 16, 2011) (Vance, J.) (citing *Collins v. Morgan Stanley Dean Witter*, *224 F.3d 496, 498 (5th Cir. 2000))*. In assessing a complaint, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."

*Plotkin v. IP Axess Inc.*, *407 F.3d 690, 696 (5th Cir. 2005)* Jones v. Evonik Corp., *620 F. Supp. 3d 508, 515 (E.D. La. 2022)*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The "basic purpose of this Amendment," our cases have recognized, "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court of City and County of San Francisco*, *387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)*. The Founding generation crafted the Fourth Amendment as a "response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Riley v. California*, *573 U.S. ——, ——, 134 S.Ct. 2473, 2494, 189 L.Ed.2d 430 (2014)*. In fact, as John Adams recalled, the patriot James Otis's 1761 speech condemning writs of assistance was "the first act of opposition to the arbitrary claims of Great Britain" and helped spark the Revolution itself. *Id., at —— ———, 134 S.Ct., at 2494 (quoting 10 Works of John Adams 248 (C. Adams ed. 1856))*. *Carpenter v. United States*, *201 L. Ed. 2d 507, 138 S. Ct. 2206, 2213 (2018)*

For much of our history, Fourth Amendment search doctrine was "tied to common-law trespass" and focused on whether the Government "obtains information by physically intruding on a constitutionally protected area." *United States v. Jones*, *565 U.S. 400, 405, 406, n. 3, 132 S.Ct. 945, 181 L.Ed.2d 911*

*(2012)*. More recently, the Court has recognized that "property rights are not the sole measure of Fourth Amendment violations." **_Soldal v. Cook County_, 506 U.S. 56, 64, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992)**. **_In Katz v. United States_, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)**, we established that "the Fourth Amendment protects people, not places," and expanded our conception of the Amendment to protect certain expectations of privacy as well. When an individual "seeks to preserve something as private," and his expectation of privacy is "one that society is prepared to recognize as reasonable," we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause. **_Smith_, 442 U.S., at 740, 99 S.Ct. 2577 _Carpenter v. United States_, 201 L. Ed. 2d 507, 138 S. Ct. 2206, 2213 (2018)**

Defense Counsel knows or reasonably should know that intentional misleading of the Court through motions is a sanctionable offense. Defense Counsel knows or reasonably should know that private actors engaged in "color of law" deprivation of rights and who conspire with other parties, subjects the private party to liability under the **_Civil Rights Act of 1871_**.

Causing a deprivation, however, only leads to liability for private actors when they act within the ambit of state authority. The second element of a liability claim under the Act requires a showing that the actor deprived the plaintiff of one these federal protections "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory."

To prove a conspiracy, the plaintiff must show an agreement or "meeting of the minds" to violate constitutional rights. These are questions of fact that only can be answered through the discovery process.

This case or controversy has been and will continue to be about property, however, the supplemental state law claims against CL&F are secondary to the predominate issue of 4th Amendment violations.

Based on the facts and evidence provided by the Plaintiff, supported by Affidavit's, receipts that provide factual basis of facially plausible claims against the Defendant, this Court should deny the Defendant's Motion to Remand.

Respectfully Submitted,

_____
Brandon Sibley *pro se*